

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | P. Michael Mahoney | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 50127 | **DATE** | 4/25/2003 |
| **CASE TITLE** | Lawrence, et al vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  For the reasons stated on the attached memorandum opinion and order, Plaintiff's Motion for Summary Judgment on the Administrative Record and Pleadings is granted and the case is remanded to the Social Security Administration for proceedings consistent with this opinion. Defendant's Motion for Summary Judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 25 2003 | |
| ✓ | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/25/2003 | |
| | | | date mailed notice | |
| sp | courtroom deputy's initials | | sp | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| TINA LAWRENCE, ) <br> for AUSTIN D. WILSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOANNE B. BARNHART, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Case No. 02 C 50127 <br><br> P. Michael Mahoney <br> Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

Austin Wilson ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *See* 42 U.S.C. §§ 405(g), 1383(c)(3). The Commissioner's final decision denied Plaintiff's application for child's Social Security Income ("SSI"), filed pursuant to Section 1614(a)(3)(A) of the Social Security Act (the "Act"). 42 U.S.C. § 405(g). Claimant's mother, Tina Lawrence, filed the application. This matter is before the Magistrate Judge pursuant to consents filed by both parties on June 26, 2002. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

## I. BACKGROUND

Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA") in part to set forth a new standard for determining whether a child under the age of eighteen is disabled. Pub. L. 104-193, 110 Stat. 2105; 65 Fed. Reg. 54747. The Social Security Administration ("SSA") published interim final rules on February 11, 1997, to effectuate the requirements of PRWORA. 65 Fed. Reg. 54747. Plaintiff protectively filed an application for SSI on January 8, 1999. (Tr. 49-53). Plaintiff's application was denied on June 16, 1999. (Tr. 23-25). Plaintiff then filed a request for reconsideration on July 9, 1999. (Tr. 26). Plaintiff was denied

SSI benefits upon reconsideration on November 24, 1999. (Tr. 27-30). On December 16, 1999, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 31-32). Plaintiff (with his mother) appeared, with counsel, before the ALJ for a hearing on April 4, 2000. (Tr. 195-204). The ALJ denied Plaintiff's request for benefits in a hearing decision issued August 15, 2000. (Tr. 11-20). Plaintiff requested a review of the hearing decision by the Appeals Council on August 18, 2000. (Tr. 8). The SSA published the final rules to implement PRWORA on September 11, 2000. On January 2, 2001, these final rules became effective. (Tr. 6). The Appeals Council denied Plaintiff's request for review on March 8, 2002. (Tr. 6-7). The Appeals Council's denial of review left the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff has requested that this court review the Commissioner's final decision.

## II. MEDICAL HISTORY

Plaintiff was born on September 6, 1994. (Tr. 188). Plaintiff's treating physician, Burton Moore, M.D., first diagnosed plaintiff with an ear infection on December 15, 1994. (Tr. 138). Plaintiff regularly suffered ear infections until James M. Severson, III, M.D., placed tubes into Plaintiff's ears on September 9, 1999. (Tr. 168). During this time period, Plaintiff suffered a total of twenty-eight ear infections. (Tr. 190). Based on this history, Drs. Moore and Severson diagnosed Plaintiff with chronic otitis media. (Tr. 129, 164).

Plaintiff began attending pre-school at the Fairview Early Education Center in September 1998. (Tr.125, 128). Plaintiff's teacher, Catherine Ciaccio, described Plaintiff in a School Activities Questionnaire for the Illinois Disability Determination Services ("DDS"), completed in February 1999, to be impulsive, quick to hit, apt to shout, and in need of reminders to stay on task. (Tr. 125-28). Ms. Ciarrio noted in her school activities questionnaire on Plaintiff that Dr. Moore had prescribed Ritalin for Plaintiff to address these behavior problems. (Tr. 127).

2

Harold Best, Ph.D., performed a psychological evaluation of Plaintiff on May 25, 1999. (Tr. 141-42). Dr. Best observed Plaintiff to be loud, intrusive, insistent and unable to remain seated. (Tr. 141). In addition to being hyperactive, Dr. Best noted that Plaintiff exhibited good cooperation, an average attitude, a slight speech disorder, normal thought processes, and a poor memory. (Tr. 141-42). Dr. Best diagnosed Plaintiff with Attention Deficit Hyperactivity Disorder ("ADHD"), Predominantly Hyperactive-Impulsive Type, moderate. (Tr. 142).

On June 6, 1999, D. G. Hudspeth, Psy.D., reviewed the reports prepared by Dr. Moore, Dr. Best, and the Fairview Early Education Center on behalf of DDS. (Tr. 143-46). Dr. Hudspeth noted Plaintiff's diagnosis of ADHD, his problems with attention span and impulsivity, and his need for teacher reminders to slow down and remain on task. (Tr. 146). From these materials, Dr. Hudspeth determined that Plaintiff's ADHD constituted a severe impairment but that this severe impairment only caused a "less than marked" limitation in the area of functioning designated as "concentration, persistence, or pace." (Tr. 143, 145). Thus, Dr. Hudspeth decided that Plaintiff did not meet, medically equal, or functionally equal any disability listed in the Social Security regulations. (Tr. 146).

After Dr. Hudspeth made this finding, Dr. Moore completed an Attention Deficit Disorder ("ADD") report for DDS on August 29, 1999. (Tr. 154-56). In this report, Dr. Moore described Plaintiff as aggressive, hyper, impulsive, and wild. (Tr. 154). Dr. Moore indicated that Plaintiff exhibited thirteen of the seventeen symptoms DDS listed on its report form for ADD/ADHD and three of the four areas for behavior disorders. (Tr. 154-56). However, Dr. Moore reported that out of eleven listed impacts on daily functioning, the Plaintiff's thirteen ADD/ADHD symptoms only impacted his daily functioning as to his sleeping patterns. (Tr. 155-56). Also, Dr. Moore found no symptoms of conduct disorder. (Tr. 156). Based on his observations as Plaintiff's

3

treating physician, Dr. Moore diagnosed Plaintiff as having aggressive ADD. (*Id.*).

Ms. Ciassio completed a Student Functional Report for DDS on October 25, 1999. (Tr. 157-60). In this report, Ms. Ciassio described Plaintiff as an average student who understood and completed assignments, followed directions with reminders, obeyed rules with reminders, and exhibited limited difficulty in working without teacher supervision. (Tr. 157-58). Plaintiff's enduring problems with attention span were ameliorated with medication and he could be easily re-directed after being impulsive. (*Id.*). Ms. Ciasso described Plaintiff as a very pleasant child whose ability to stay on task had been enhanced with medication. (Tr. 160).

On October 25, 1999, Pediatric Neurologist Ammur Katerji, M.D., examined Plaintiff. (Tr. 175-76). Dr. Katerji noted Plaintiff to be very hyperactive and aggressive. (Tr. 176). Plaintiff repeatedly used profanity during the examination, although Plaintiff eventually settled down. (*Id.*). Dr. Katerji made a minor adjustment to Plaintiff's Ritalin dosage and recommended that Plaintiff see a child psychiatrist should his symptoms become worse. (*Id.*).

On November 12, 1999, Donald MacLean, Ph.D. completed a Childhood Disability Evaluation Form for DDS based on the following materials: Dr. Moore's August 1999 report; a childhood functioning report submitted by Plaintiff's mother dated July 31, 1999; a report completed by Dr. Severson on October 19, 1999; Dr. Katerji's report dated October 25, 1999; and Ms. Ciassio's report dated October 25, 1999. (Tr. 177-80). Dr. MacLean determined that Plaintiff suffered from ADHD and chronic otitis media, and that these impairments were severe. (Tr. 177). Dr. MacLean, finding that Plaintiff exhibited only a "less than marked" limitation in motor function, concluded that Plaintiff did not meet, medically equal, or functionally equal the severity of any listing. (Tr. 179-80). Victoria J. Dow, M.D., reviewed and endorsed this report. (Tr. 177).

Anne Holm and Mitchell Davenport, Mental Health Clinicians with the Janet

4

Wattles Center, examined Plaintiff on March 16, 2000. (Tr.188-92). These clinicians found Plaintiff to have a moderately impaired memory, a neutral mood, and a normal affect and intensity. (Tr. 189). Holm and Davenport also noted that Plaintiff could bathe and dress himself, enjoyed playing with video games, puzzles, and action figures, and was signed up to play T-Ball in the summer of 2000. (Tr. 190). They concluded that Plaintiff exhibited aggressive behavior at home and school and had difficulty with peers. (Tr. 191). Holm and Davenport diagnosed Plaintiff with combined type ADHD and chronic ear infections. (*Id.*).

### III. **STANDARD OF REVIEW**

The court may affirm, modify, or reverse the ALJ's decision outright, or remand the proceeding for rehearing or hearing of additional evidence. 42 U.S.C. § 405(g). Review by the court, however, is not *de novo*; the court "may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the ALJ." *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir. 1987) (citations omitted); *see also Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). The duties to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide the case accordingly are entrusted to the commissioner; "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the Commissioner's delegate the ALJ)." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971); *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). If the Commissioner's decision is supported by substantial evidence, it is conclusive and this court must affirm. 42 U.S.C. § 405(g); *also see Arbogast v. Bowen*, 860 F.2d 1400, 1403 (7th Cir. 1988). "Substantial evidence" is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The Seventh Circuit demands even greater deference to the ALJ's evidentiary determinations. So long as the ALJ "minimally articulate[s] his reasons for crediting or

5

rejecting evidence of disability," the determination must stand on review. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). Minimum articulation means that an ALJ must provide an opinion that enables a reviewing court to trace the path of his reasoning. *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987); *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). Where a witness credibility determination is based upon the ALJ's subjective observation of a witness, the determination may only be disturbed if it is "patently wrong" or if it finds no support in the record. *Kelly v. Sullivan*, 890 F.2d 961, 965 (7th Cir. 1989); *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989). "However, when such determinations rest on objective factors of fundamental implausibilities rather than subjective considerations, [reviewing] courts have greater freedom to review the ALJ decision." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994); *Yousif v. Chater*, 901 F. Supp. 1377, 1384 (N.D. Ill. 1995).

## IV. ANALYSIS

The threshold issue presented is whether this court should review the final decision of the Commissioner under the interim final rules or the final rules of the Social Security regulations governing the determination of the disabilities of children. The ALJ rendered his decision denying Plaintiff's application for SSI benefits before the final rules became effective on January 2, 2001. (Tr. 6). The Appeals Council denied Plaintiff's request for review after the final regulations took effect stating that Plaintiff's review would fail under both the interim and final rules. (*Id.*).

Congress enacted PRWORA in part to set forth a new standard for determining whether a child is disabled. Pub. L. 104-193; 65 Fed. Reg. 54747. Congress recognized the administrative difficulties associated with implementing the new standard and specifically provided for the application of PRWORA to all SSI claims filed after the effective date of PRWORA and to all claims pending administrative or judicial review after that date, regardless of whether regulations had been issued by the SSA. Pub. L.

104-193, § 211(d). In *Hickman v. Apfel*, the Seventh Circuit Court of Appeals addressed a situation where a child applied for SSI benefits before PRWORA became effective and the court reviewed the case after that act became effective. 187 F.3d 683, 688 (7th Cir. 1999). The Seventh Circuit concluded that when a "request for judicial review [is] still pending at the time Congress amend[s] [a] statute, we apply the new law." *Id.*

The interim final rules and the final rules at issue in this case were both promulgated by the SSA to implement the child disability provisions of PRWORA. 65 Fed. Reg. 54747. Given the clear statutory direction that PRWORA be applied to all claims not finally adjudicated by August 22, 1996, with or without promulgated regulations by the SSA, it reasonably follows that Congress intended that all subsequent regulations issued to implement this statute be applied to all cases not finally adjudicated after the effective date of those regulations. *See* Pub. L. 104-193, § 211(d). The final rules published on September 11, 2000, largely implement this intent. 65 Fed. Reg. 54,751. The regulations specify that the final rules apply to all new applications filed on or after January 2, 2001, and to all claims pending administrative review, including claims remanded to the SSA by Federal Courts after that date. *Id.* However, the regulations suggest that Federal Courts reviewing a final decision of the Commissioner made before the effective date of the final rules should use the interim final rules in reviewing that decision. *Id.* This suggestion lacks support in the language of PRWORA.

The Commissioner's expectation that Federal Courts should not apply the final rules to certain cases pending judicial review on or after January 2, 2001, has been rejected in at least two cases in the Northern District of Illinois. *Abrams v. Barnhart*, No. 01-8016, 2002 U.S. Dist. LEXIS 10198, at *11 (N.D. Ill. June 5, 2002); *Mayfield v. Barnhart*, No. 01-9418, 2003 U.S. Dist. LEXIS 1310, at *20 (N.D. Ill. Jan. 29, 2003). In *Abrams*, the court addressed a scenario very similar to the instant case. An ALJ denied Abrams' claim for SSI under the interim rules, the Appeals Council denied Abrams'

7

request for appeal after the final rules became effective, and the final rules were effective at the time the Court heard the appeal. *Abrams*, 2002 U.S. Dist. LEXIS 10198, at *8-9. The *Abrams* Court concluded that statutory intent and corresponding case law required the application of the final rules to that case. *Id.* at *11. In *Mayfield*, the Court reached the same conclusion reviewing a case with a nearly identical timeline as the *Abrams* case and the immediate case. *Mayfield*, 2003 U.S. Dist. LEXIS 1310, at *20-21.

The Commissioner cites the case *Bolling v. Massanari*, No 00-6717, 2001 WL 777494, at *3 (N.D. Ill. June 27, 2001), as an example of the Northern District of Illinois reviewing a final decision of the Commissioner after January 2, 2001, using the interim final rules. (Def.'s Supp. Auth. at 3). Relying on this authority, the Commissioner argues that the judges in *Abrams* and *Mayfield* ignored the SSA regulations and applicable case law in reaching their respective decisions. (Def.'s Supp. Auth. at 4). However, *Bolling* is distinguishable from *Abrams* and *Mayfield*. In *Bolling*, the decisions of the ALJ and the Appeals Council were both rendered before the final rules became effective. *Bolling*, 2001 WL 777494, at *1. In *Abrams* and *Mayfield*, the decision of the ALJ was rendered before the effective date of the final rules and the Appeals Council issued its decision after that effective date. *Abrams*, 2002 U.S. Dist. LEXIS 10198, at *8; *Mayfield*, 2003 U.S. Dist. LEXIS 1310, at *20. Furthermore, the decisions of the Appeals Council in both *Abrams* and *Mayfield* made reference to the final rules where in *Bolling* that clearly did not occur. *Abrams*, 2002 U.S. Dist. LEXIS 10198, at *8; *Mayfield*, 2003 U.S. Dist. LEXIS 1310, at *20. Thus, the *Bolling* court did not encounter a scenario where the Appeals Council itself suggested that the final rules may be relevant to the disposition of the case. Because Plaintiff's respective requests for administrative and judicial review were pending after the effective date of the final regulations, and because the Appeals Council has indicated that the final rules maybe relevant to resolving the case presented here, the Magistrate Judge holds that the final rules are applicable to this case.

The ALJ decided that Plaintiff did not medically meet or equal any listed disability under the interim rules. (Tr. 20). However, the ALJ stated that Plaintiff's "best shot" to qualify for SSI benefits was in the broad areas of functional equivalence. (Tr. 16). The ALJ found a marked limitation for Plaintiff in the area of "social functioning" and a less than marked limitation in the area of "concentration, persistence, or pace." (Tr. 15, 19) As one extreme limitation or two marked limitations in the broad areas of functioning were required under the interim rules to qualify for SSI benefits under functional equivalence, Plaintiff narrowly failed to qualify for benefits. 20 C.F.R. § 416.926a(b)(2) (2000).

The final rules extensively reorganized and revised 20 C.F.R. § 416.926a, the section that governs the functional equivalence of children. 65 Fed. Reg. 54,752. A significant clarification appears in § 416.926a(a). In the interim rules, the regulations provided that when the SSA assessed functional limitations, it considered what a child could not do due to disabling impairments. 65 Fed. Reg. 54,756. Under the final rules, this subsection now states that the SSA considers not only what a child cannot do, but also what a child has difficulty doing, needs help doing, or is restricted from doing because of the impairments. 65 Fed. Reg. 54,756. This new language "clarifies" that the SSA considers all the limitations of a child, "even when the child has some ability to do an activity." 65 Fed. Reg. 54,756. This new language broadens the scope of limitations that the ALJ may consider in rendering his decision.

The reorganization and revision of the broad areas of functioning accentuate this change of approach. Under the interim rules, there were five broad areas of functional equivalence. 20 C.F.R. § 416.926a(c)(4) (2000). Under the new final rules, six domains now exist. 20 C.F.R. § 416.926a(g-l) (2002). For the most part these new domains reorganize the earlier areas of functioning. 65 Fed. Reg. 54,756. However, there are significant modifications relevant to this case. The interim rules defined the broad area of

9

functioning designated as "concentration, persistence, or pace" in a single sentence: "The *ability or inability* to attend to, and sustain concentration on, an activity or task, such as playing, reading, or practicing a sport, and the ability to perform the activity or complete the task at a reasonable pace." 20 C.F.R. § 416.926a(c)(4)(vi) (2000) (emphasis added). This definition's subscription to the can/cannot dichotomy of the interim final rules is apparent - either a child is able or is unable to function. In the final rules, the area of "concentration, persistence, or pace" has been absorbed by the domain of "attending and completing tasks." 65 Fed. Reg. 54,759. This new domain of functional limitation is defined according to the broader evidentiary review required by 20 C.F.R. § 416.926a(a) and its definition is more extensive than its interim rules predecessor. The new breadth and extent of the definition for "attending and completing tasks" is evidenced by its length, covering one and a half pages in the Code of Federal Regulations. 20 C.F.R. § 416.926a(h). Whereas the definition of prior domain contained virtually no guidance in its can/cannot analysis, the final definition of the new domain provides more flexibility and guidance in evaluating a child's mental functioning. This domain has two factors to consider: (1) *how well* a child focuses and maintains his attention; and (2) *how well* a child begins, carries out, and finishes his activities, including the pace at which the child performs activities and the ease with which he changes from one activity to the next. 20 C.F.R. § 416.926a(h).

The decision below is pregnant with the can/cannot approach specified in the interim rules. For example, in analyzing Plaintiff's allegation of motor skill limitations, the ALJ assumed from the fact that Plaintiff had signed up to play T-Ball for the summer of 2000 that Plaintiff's balance was "just fine." (Tr. 17). The ALJ did not make any findings as to *how well* Plaintiff could exercise his motor skills, only that Plaintiff *could* exercise those skills. The ALJ also discussed Plaintiff's ability to focus and stay on task. The ALJ seemed satisfied that Plaintiff's early education teacher considered Plaintiff an

10

"average" student. (Tr. 17-18). However, in the same report that Plaintiff's instructor labeled him as average, the instructor also noted that Plaintiff continued to have problems with his attention span (Tr. 157). Again, the ALJ addressed whether Plaintiff was capable of focusing and stay on task, not on how well Plaintiff could focus and stay on task. (Tr. 17-18).

More fundamentally, the ALJ relied substantially on the reports submitted by reviewing physicians. (Tr. 16-17). These reports contain no written analysis, only spaces to be checked if a child has no limitation, a less than marked limitation, a marked limitation, or an extreme limitation. (Tr. 145, 179). Thus, there is no way for a reviewing court to determine to what extent the reviewing physicians, or even the treating physicians (who completed SSA forms prepared according to the specification of the interim rules), made their analyses according to the narrow can/cannot approach that is now rejected by the final rules. 20 C.F.R. § 416.926a(a) (2002).

In addition to abandoning the can/cannot dichotomy, the final rules also replace the one sentence definition of "concentration, persistence and pace" with a more substantial definition for the new domain of "attending and completing tasks." 20 C.F.R. § 416.926a(h) (2002). For the first analysis factor of how well a child focuses and maintains his attention, the regulations define the term "attention." Attention includes a child's ability to: regulate levels of alertness; initiate and maintain concentration; filter out distractions; remain focused on an activity at a consistent level of performance; focus long enough to initiate and complete an activity and change focus after completing it; and return to a task after losing or changing focus without the frequent reminders of others to complete the task. 20 C.F.R. § 416.926a(h)(1)(i). The regulations go further, specifying that "adequate attention" permits a child to think and reflect before starting or deciding to stop an activity. 20 C.F.R. § 416.926a(h)(1)(ii). The regulations also define "focuses attention" as a child's ability to attempt tasks at an appropriate pace and to determine the

time needed to finish the task. 20 C.F.R. § 416.926a(h)(ii).

The second analysis factor of how well a child begins, carries out, and finishes his activities is divided into age group descriptors. 20 C.F.R. § 416.926a(h). For a child between the ages of three and six years of age, the regulations provide examples of what kinds of activities a child should be able to perform having the requisite attention span. Children in this age group should be able to: pay attention when directly spoken to; sustain attention for play and learning activities; concentrate on activities such as putting puzzles together or completing art projects; gather clothes; dress and feed themselves; put their toys away; wait their turn; and change their activity when caregiver so indicates. 20 C.F.R. § 416.926a(h)(2)(iii).

Finally, the definition of "attending and completing tasks" concludes with six non-exclusive examples of limited functioning in this domain. 20 C.F.R. § 416.926a(h)(3). These examples contain a disclaimer that these examples do not necessarily describe a "marked" or "extreme" limitation. *Id.* With this proviso, a child may have a limitation in the domain of "attending and completing tasks" if he: (1) is easily startled, distracted, or over reactive to sounds, sights, movements, or touch; (2) is slow to focus on, or fails to complete activities of interest; (3) repeatedly becomes sidetracked from activities and frequently interrupts others; (4) is easily frustrated and gives up on tasks; (5) requires extra supervision to stay engaged in an activity. 20 C.F.R. § 416.926a(h)(i-v).

In short, the one sentence definition of "concentration, persistence, or pace" has been replaced with a broader and more specific rule. *See* 20 C.F.R. § 416.926a(h). The decision of whether or not to find that a Plaintiff is entitled to SSI benefits is by necessity a very factually intensive analysis. The rules governing which facts to consider and how to consider them play a vital role in that analysis. A significant change in the rules may have a material impact on that analysis and alter the outcome of a particular case. Given

the fact that the final rules adopt a new ("clarified") approach for childhood SSI benefits, it is inappropriate for this court to reweigh the evidence in the record to determine if the ALJ's findings of fact would change under the final rules. Further, the nature of the evidence relied upon below and the possibility that it was infected with the can/cannot approach of the interim rules prevent this court from being able to ascertain whether the Commissioner's decision is supported by relevant evidence that would be accepted as adequate to support a conclusion under the final rules. *See Richardson*, 402 U.S. at 401. The Appeals Council's one sentence assurance that the new regulations do not alter the decision of the ALJ is not sufficient to allay these concerns. It is not a path the court can follow and ascertain if there is substantial evidence to support the decision.

## V. CONCLUSION

For the above mentioned reasons, Plaintiff's Motion for Summary Judgment on the Administrative Record and Pleadings is granted and the case is remanded to the Social Security Administration for proceedings consistent with this opinion. Defendant's Motion for Summary Judgment is denied.

ENTER:

P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 4/25/03

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

LAWRENCE et al

v.

BARNHART

**JUDGMENT IN A CIVIL CASE**

Case Number: 02 C 50127

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

☒ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that summary judgment is granted in favor of plaintiffs Lawrence et al and against defendant Barnhart and this action is remanded to the Social Security Administration for further proceedings consistent with this opinion.

Michael W. Dobbins, Clerk of Court

Date: 4/25/2003

J. Smith, Deputy Clerk